64 F.3d 666
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Samuel Ndubuisi NYENKE, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 94-70177.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 9, 1995.*
Decided Aug. 14, 1995.
 
 Petition to Review a Decision of the Immigration and Naturalization Service, I&NS No. Ahf-qox-myr.
 INS
 PETITION DENIED.
 Before: THOMPSON, LEAVY, and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 I. Overview
 
 2
 Samuel Ndubuisi Nyenke ("Nyenke"), a native and citizen of Nigeria, petitions pro se for a review of (1) the order of the Board of Immigration Appeals ("BIA") denying his motion to reopen deportation hearings to submit new evidence; and (2) the BIA's decision affirming the denial of the Immigration Judge ("IJ") of relief from deportation pursuant to an application for adjustment of status under section 245 of the Immigration and Naturalization Act ("INA"), 8 U.S.C. Sec. 1255, and a waiver of inadmissibility under section 212(h) of the Act, 8 U.S.C. Sec. 1182(h). We dismiss Nyenke's petition to review the decision of the IJ for lack of jurisdiction. We have jurisdiction over Nyenke's petition to review the BIA's denial of his motion to reopen. 8 U.S.C. Sec. 1105(a). We deny Nyenke's petition because the BIA did not abuse its discretion in denying Nyenke's motion to reopen.
 
 II. Factual and Procedural Background
 
 3
 Nyenke entered the United States lawfully in 1980 as a nonimmigrant student, authorized to remain until 1981. Nyenke remained in the United States beyond the expiration of his visa. Meanwhile, Nyenke applied for and received student loans from the State of California, once per year from 1981 to 1986. On each of those applications, he claimed to be a United States citizen on penalty of perjury. Although he had apparently married a United States citizen in 1983 or 1984, Nyenke was not himself a United States citizen at the time he claimed to be one on the student loan applications. He has never become naturalized as a United States citizen.
 
 
 4
 In May 1987, Nyenke graduated from California State University at Long Beach with a degree in Chemistry. In October 1987, Nyenke pled guilty to and was convicted of perjury by declaration in violation of Cal. Penal Code Sec. 118 and grand theft in violation of Cal. Penal Code Sec. 248 in connection with his false statements on his student loan application of 1984 and his receipt of those student loan funds. Although perjury in California is punishable by up to 4 years of imprisonment, Nyenke served 180 days in county jail and was placed on probation in lieu of imposition of a sentence.
 
 
 5
 In February 1988, the INS began deportation proceedings against Nyenke. In June 1988, Nyenke conceded deportability based on the overstay of his visa and simultaneously applied for relief from deportation via an adjustment of status and a waiver of inadmissibility. Hearings were held before an IJ on June 30, 1988, October 3, 1988, and January 4, 1989. At the close of the hearings on January 4, 1989, the IJ denied Nyenke's application for relief from deportation. Nyenke appealed the IJ's decision to the BIA. On March 31, 1993, the BIA denied Nyenke's appeal.
 
 
 6
 On July 12, 1993, more than 90 days after the BIA's March 31, 1993 order, Nyenke filed a motion with the BIA to reopen his deportation hearings. He claimed ineffective assistance of both his trial and appellate counsel. He also presented the BIA with a copy of an April 10, 1992 order of a California Superior Court purporting to expunge his 1987 convictions for perjury and grand theft. Nyenke asserted that he was now eligible for an adjustment of status without a waiver of inadmissibility. He also claimed he was entitled to a suspension of deportation.
 
 
 7
 The BIA denied Nyenke's motion to reopen on February 9, 1994, on the grounds that he (1) failed to make a prima facie case that he received ineffective assistance of counsel; (2) needed a waiver of inadmissibility to be granted relief from deportation via adjustment of status; (3) was not admissible and did not qualify for a waiver of inadmissibility, and therefore was statutorily ineligible for relief from deportation via an adjustment of status; and (4) was ineligible for a suspension of deportation. Nyenke petitions us to review both the March 31 order of the BIA affirming the IJ's denial of relief from deportation and the February 9 order denying his motion to reopen.
 
 III. The Direct Appeal to the BIA
 
 8
 Nyenke appears to challenge both the BIA's March 31 order affirming the IJ's denial of relief from deportation and the BIA's February 9 order denying Nyenke's motion to reopen his deportation proceedings. The INS contends that we lack jurisdiction to review the March 31 order because Nyenke never appealed that order. Nyenke does not address this contention. The requirement of a timely-filed petition is mandatory and jurisdictional. Lee v. INS, 685 F.2d 343, 343 (9th Cir. 1982). We agree with the INS that we lack jurisdiction over the March 31 order. Nyenke's petition to review that order is untimely not necessarily because Nyenke never appealed the March 31 order to us, but because his motion to reopen was filed beyond the time allowed for him to petition us to review the March 31 order.
 
 
 9
 If Nyenke filed his motion to reopen the deportation proceedings within the statutory time to appeal the March 31 order to this court, his motion to reopen would have tolled the time in which to petition us to review the March 31 order. See Hyun Joon Chung v. INS, 720 F.2d 1471, 1474 (9th Cir. 1983), cert. denied, 467 U.S. 1216 (1984). The statutory time in which to appeal a final order of the BIA is 90 days. 8 U.S.C. Sec. 1105a(a)(1). Nyenke filed his motion to reopen on July 12, 1993, more than 90 days after the March 31, 1993 order. Thus Nyenke's motion to reopen did not toll the time in which to petition us to review the BIA's March 31 order. We conclude we lack jurisdiction over Nyenke's challenge to the BIA's March 31 order.
 
 
 10
 IV. BIA's Denial of Nyenke's Motion to Reopen
 
 
 11
 Nyenke timely appeals the BIA's denial of his motion to reopen his deportation proceedings. Regardless of the type of relief Nyenke seeks, we review the BIA's denial of Nyenke's motion to reopen for an abuse of discretion. See INS v. Doherty, 502 U.S. 314, 323 (1992); Delmundo v. INS, 43 F.3d 436, 439 (9th Cir. 1994).
 
 A. Ineffective Assistance of Counsel
 
 12
 We conclude it was not an abuse of discretion for the BIA to reject Nyenke's claim of ineffective assistance of counsel. The record reveals the BIA correctly determined that Nyenke failed to demonstrate a prima facie case of ineffective assistance. Furthermore, even if Nyenke's attorney failed to appeal the BIA's March 31 order, we conclude that Nyenke has suffered no prejudice from this omission: In considering Nyenke's motion to reopen, the BIA has fully reviewed the record and has revisited the merits of Nyenke's possible avenues of relief. See Ramirez-Durazo v. INS, 794 F.2d 491, 499 (9th Cir. 1986). Thus the BIA was within its discretion to reject this asserted ground for reopening Nyenke's deportation proceedings. Delmundo, 43 F.3d at 439 (quoting INS v. Abudu, 485 U.S. 94, 104-05 (1988)). For purposes of Nyenke's petition, the BIA assumed, and we assume without deciding, that (1) Nyenke's 1987 convictions have been expunged; (2) he is married to a U.S. citizen; and (3) he has a U.S. citizen son.
 
 B. Waiver of Inadmissibility
 
 13
 Because his convictions were expunged, Nyenke claimed he was no longer deportable for having been convicted of two or more crimes of moral turpitude. We disagree with Nyenke and conclude it was within the discretion of the BIA to reject Nyenke's assertion that the expungement of his 1987 convictions no longer made him deportable, and indeed made him statutorily eligible for an adjustment of status without the requirement that he obtain a waiver of inadmissibility.
 
 
 14
 Nyenke misapprehends the difference between being deportable and being inadmissible. His criminal acts are not relevant to the grounds for his deportability. They are relevant, however, to the grounds for his inadmissibility. As the BIA correctly pointed out in its denial of Nyenke's motion to reopen, the IJ found that Nyenke was deportable not on the basis of his criminal acts, but as an "overstay." Nyenke remained inadmissible, however, due to his criminal acts.
 
 
 15
 At the time of Nyenke's hearing before the IJ, the INA provided in relevant part:
 
 
 16
 An alien who would be excludable because of the conviction of an offense for which the sentence actually imposed did not exceed a term of imprisonment in excess of six months, or who would be excludable as one who admits the commission of an offense for which a sentence not to exceed one year's imprisonment might have been imposed on him, may be granted a visa and admitted to the United States if otherwise admissible: Provided, That the alien has committed only one such offense, or admits the commission of acts which constitute the essential elements of only one such offense.
 
 
 17
 8 U.S.C. Sec. 1182(a)(9) (first and third emphases added). Even if his convictions were expunged at the time of his hearing before the IJ (which they were not), the BIA determined that Nyenke was nevertheless inadmissible at the time of his hearing before the IJ and at the time the BIA considered his direct appeal and motion to reopen, because Nyenke testified at the hearing that he had lied about his citizenship status on his student loan applications six times. Thus Nyenke had committed the essential elements of more than one crime of moral turpitude for which a sentence of up to four years "might have been imposed on him." We note the record reveals that Nyenke has never recanted his admission. We conclude the BIA did not abuse its discretion in determining that even though Nyenke's convictions had been expunged, he was still inadmissible, and therefore was still required to obtain a waiver of inadmissibility before he could be eligible for an adjustment of status.
 
 C. Adjustment of Status
 
 18
 At his initial deportation hearing, Nyenke conceded deportability. The IJ found Nyenke deportable as an "overstay." 8 U.S.C. Sec. 1251(a)(2) (1988) (subsequently redesignated as 8 U.S.C. Sec. 1251(a)(1)(B)). In an effort to escape deportation, Nyenke then sought relief from the IJ under section 245 of the INA, 8 U.S.C. Sec. 1255. Section 245 provides that the Attorney General may, in her discretion, adjust the status of an alien inspected and admitted to the United States to that of an alien lawfully admitted for permanent residence if: (1) the alien applies for such adjustment; (2) he is eligible to receive an immigrant visa and is admissible to the United States for permanent residence; and (3) an immigrant visa is immediately available to him at the time his application is filed. An applicant for adjustment of status, although physically in the United States, is considered exactly as though he were at the border applying for initial entry. Choe v. INS, 11 F.3d 925, 928 (9th Cir. 1993).
 
 
 19
 Although the record does not reveal any findings by the IJ regarding the availability of a visa and so forth, the sole issue concerning Nyenke's request for an adjustment of status appears to have been whether he was "admissible to the United States for permanent residence," 8 U.S.C. Sec. 1255(a), in light of the stricture contained in 8 U.S.C. Sec. 1182(a)(9).[1] This provision of the INA provides that an alien who has been convicted of a crime involving moral turpitude "shall be ineligible to receive a visa [] and shall be excluded from admission into the United States." Nyenke was convicted of two such crimes, the 1987 perjury and grand theft convictions. He also admitted "committing acts which constitute the essential elements of such a crime," 8 U.S.C. Sec. 1182(a)(9) (1988), when he admitted having lied about his citizenship on his other student loan applications.
 
 
 20
 Consequently, in order to remain eligible for an adjustment of status, Nyenke had to seek a waiver of inadmissibility from the IJ under Sec. 212(h) of the INA, 8 U.S.C. Sec. 1282(h). At the time of the hearing before the IJ, Sec. 212(h) provided in relevant part that the Attorney General may, in her discretion, waive inadmissibility under Sec. 212(a)(9) for any alien who was the spouse or parent of a United States citizen, if the alien established that his exclusion "would result in extreme hardship" to the United States citizen spouse or child. The IJ found Nyenke had failed to establish the extreme hardship element of Sec. 212(h), and denied Nyenke's request for adjustment of status.
 
 
 21
 The BIA revisited the IJ's determination that Nyenke had failed to establish extreme hardship both in Nyenke's direct appeal of the IJ's decision and in Nyenke's motion to reopen.[2] At the time the BIA considered his application for adjustment of status, Nyenke remained an individual seeking to enter the United States as a lawful permanent resident. The BAI determined that under the amended version of Sec. 212(h), Nyenke was still required to demonstrate his eligibility for a favorable exercise of the Attorney General's discretion by establishing that his wife or child would suffer extreme hardship if he were deported. 8 U.S.C. Sec. 1182(h)(1)(B).
 
 
 22
 On the merits, the BIA held that Nyenke had failed to establish this statutory element. Because the record reveals that Nyenke failed to produce evidence of such extreme hardship to his wife or son, we conclude the BIA did not abuse its discretion in concluding that Nyenke failed to show the requisite extreme hardship to his wife or son. Without the waiver of inadmissibility, Nyenke was statutorily ineligible for a favorable exercise of the Attorney General's discretion to adjust his status. Thus the BIA did not abuse its discretion in denying Nyenke his request for adjustment of status. We conclude it was not an abuse of discretion for the BIA to determine that Nyenke was ineligible for a waiver of inadmissibility and that therefore Nyenke was statutorily ineligible for an adjustment of status.
 
 D. Suspension of Deportation
 
 23
 Nyenke first made his request for suspension of deportation under section 244(a) of the INA, 8 U.S.C. Sec. 1254(a) in his motion to reopen. Under section 244, to qualify for a suspension of deportation, Nyenke must show (1) continuous physical presence in the United States for a period of at least seven years immediately preceding the date of application, (2) good moral character; and (3) that he is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to himself, or to his United States citizen wife or child. 8 U.S.C. Sec. 1254(a). Tukhowinich v. INS, No 93-71041, slip op. 8731, 8737 (9th Cir. July 19, 1995). We review for an abuse of discretion the BIA's decision to deny an application for suspension of deportation for lack of extreme hardship. Id., slip op. at 8737-38.
 
 
 24
 We have reviewed the entire record and conclude the BIA was within its discretion in denying Nyenke's request for suspension of deportation. Nyenke failed to present virtually any evidence that his deportation would result in extreme hardship to himself or to his United States citizen wife or son. Accordingly, the BIA was within its discretion to conclude that Nyenke had not made the requisite prima facie showing of extreme hardship and was therefore not eligible for suspension of deportation.
 
 V. Conclusion
 
 25
 We conclude, after a review of the entire record of this case, that the BIA did not abuse its discretion in denying Nyenke's motion to reopen. Therefore, the petition to review is DENIED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed. R. App. P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Under the Immigration Act of 1990, 8 U.S.C. Sec. 1182(a)(9) has been revised and redesignated as 8 U.S.C. Sec. 1182(a)(2)(A)
 
 
 [2]
 An application for admission to the United States is a continuing application, and admissibility is determined on the basis of the facts and the law at the time the application is finally considered by the BIA. Palmer v. INS, 4 F.3d 482, 485 n.11 (1993). Accordingly, the BIA applied the most recent version of Sec. 212(h) in rendering its decision. Although Sec. 212(h) was amended in certain respects by the 1990 Act and the 1991 Amendments, these changes had no effect on the issue in his case